PAUL L. REIN, Esq. (SBN 43053)
AARON M. CLEFTON, Esq.  (SBN 318680)
REIN & CLEFTON, Attorneys at Law
200 Lakeside Drive, Suite A
Oakland, CA  94612
Telephone:  510/832-5001
Facsimile:  510/832-4787
info@reincleftonlaw.com

Attorneys for Plaintiff
CLAUDIA MOTLEY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| CLAUDIA MOTLEY<br><br>    Plaintiff,<br><br>v.<br><br><br>INGLEWOOD IMAGING CENTER, LLC,<br><br><br>    Defendant. | **CASE NO. 2:22-cv-08400**<br>**Civil Rights**<br><br>**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES:**<br><br>**1. Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*)**<br><br>**2. Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52)**<br><br>**3. Violation of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*)**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff CLAUDIA MOTLEY complains of Defendant INGLEWOOD IMAGING CENTER, LLC, and alleges as follows:

1.      **INTRODUCTION:**  Employees at Inglewood Imaging Center, including office staff and medical staff, told Plaintiff she could not enter the imaging center with her service dog to complete medically necessary imaging of a pituitary gland tumor and an ultrasound of her uterine fibroids. Plaintiff explained the tasks that her dog performs for her, and Buddy was wearing a vest and tags indicating that he is a service dog.  However, Defendant still refused to serve

1

1   Plaintiff.   As a result of Defendant's failure to implement proper a service dog

2   policy and lack of employee training, Plaintiff was denied equal access to visit

3   necessary medical treatment.  This denial was videotaped by a witness, Plaintiff's

4   assistive caregiver.

5        2.     Plaintiff had to reschedule her medical imaging at another facility

6   which took over a month.  Thus, Defendant's delayed Plaintiff necessary medical

7   treatment by refusing to treat her due to the presence of her service dog.  Plaintiff

8   was also subject to the humiliation and difficulty having to choose between being

9   separated from her service dog and receiving medical treatment.

10        3.     As a result of Defendant's illegal acts, Plaintiff suffered denial of her

11   civil rights and suffered physical, mental and emotional damages.  Plaintiff would

12   like to return to receive care at Inglewood Imaging, because it is conveniently

13   located for her to use, but she is unable to do so with her medically necessary

14   service dog until the policies of Inglewood Imaging are made accessible to disabled

15   individuals who use service dogs, including revision of its service dog policies and

16   necessary employee training. She has brought this lawsuit force Defendant to

17   change its discriminatory and illegal policies, and to compensate her for refusing to

18   treat her while she was accompanied by her service dog because she is a physically

19   disabled person who needs the assistance of his qualified service dog.  Plaintiff

20   seeks an injunction to protect the rights of all disabled persons, including Plaintiff,

21   when accompanied by a qualified service dog at Inglewood Imaging located 211

22   Prairie Avenue, Inglewood, California.

23        4.     **JURISDICTION:**  This Court has jurisdiction of this action pursuant

24   to 28 USC sections 1331 and 1343.  This Court has jurisdiction over the claims

25   brought under California law pursuant to 28 U.S.C. § 1367.

26        5.     **VENUE:**  Venue is proper in this court pursuant to 28 USC

27   section 1391(b) and is proper because the real property which is the subject of this

28   action is located in this district and that Plaintiff's causes of action arose in this

1    district.

2         6.    **INTRADISTRICT:**  This case should be assigned to Western

3    Division as the real property which is the subject of this action is located in this

4    intradistrict and Plaintiff's causes of action arose in this intradistrict.

5         7.    **PARTIES:**  Plaintiff Claudia Motley is a "qualified" physically

6    disabled person.  She suffers from degenerative disc disease, stenosis, neuropathy,

7    Complex PTSD, seizure disorder, hearing loss, and a tumor on her pituitary gland.

8    Plaintiff relies upon and has trained her service dog, a terrier-shih tzu mix named

9    "Buddy," to assist her with certain tasks, including 1) retrieve objects for her, 2)

10   pushing her medical alert button in an emergency, 3) alerting her to the onset of a

11   seizure, 4) alerting her to the onset of a panic attack, 5) waking her from night

12   terrors, 6) alerting her to presence of people at the door or approaching people

13   which Plaintiff does not notice due to her hearing loss, and 7) establishing a

14   perimeter around her if a stranger gets too close to Plaintiff.  Buddy has been both

15   individually trained by Plaintiff and professionally trained as a service dog. Plaintiff

16   reinforces that training daily.  Buddy wears a vest and a tag that clearly identifies

17   him as a service dog.  Plaintiff is a qualified person with a disability as defined

18   under federal and state law.  42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and

19   California Government Code § 12926(1).

20        8.    Defendant INGLEWOOD IMAGING, LLC, is and was at all times

21   relevant to this Complaint the owner, operator, lessor and/or lessee of the subject

22   business known as Inglewood Imaging where was scheduled by her insurance to

23   receive medical imaging services located at 211 Prairie Avenue, Inglewood

24   Imaging, California.

25        9.    Inglewood Imaging is a place of "public accommodation" and a

26   "business establishment" subject to the requirements *inter alia* of multiple

27   categories of 42 U.S.C. section 12181(7) of the Americans with Disabilities Act of

28   1990, of California Civil Code sections 51 *et seq.*, and of California Civil Code

3

1  sections 54 *et seq*.

2      10.  **FACTUAL STATEMENT:**  Plaintiff is a person with multiple

3  disabilities who needs regular medical imaging services to monitor her progressive

4  pituitary gland tumor and fibroids.  Inglewood Imaging is an imaging center which

5  Plaintiff has been treated at previously and which accepts her insurance plan.

6  Plaintiff has been working with her service dog Buddy for the last six years.  Buddy

7  is a terrier-Shih Tzu mix who was individually trained to be a service dog by

8  Plaintiff with the guidance of a professional trainer.  Plaintiff continues to train

9  Buddy to serve her specific needs throughout their relationship.  Buddy is

10  specifically trained to assist Plaintiff with numerous tasks including 1) retrieve

11  objects for her, 2) pushing her medical alert button in an emergency, 3) alerting her

12  to the onset of a seizure, 4) alerting her to the onset of a panic attack, 5) waking her

13  from night terrors, 6) alerting her to presence of people at the door or approaching

14  people which Plaintiff does not notice due to her hearing loss, and 7) establishing a

15  perimeter around her if a stranger gets too close to Plaintiff.

16      11.  Buddy is a working dog; he is not a pet.  Plaintiff and Buddy have

17  trained extensively together, and they supplement that training daily.  Plaintiff takes

18  Buddy everywhere with her in public.  It is important they stay together at all times

19  because (a) Buddy provides important services for Plaintiff; and (b) it is part of the

20  training and bonding requirement that they be together constantly to maintain their

21  bond.  Where Plaintiff goes, Buddy goes.

22      12.   It is self-evident to any reasonable person that Buddy is a service dog

23  and should be allowed to accompany Plaintiff wherever she goes based on his vest

24  and calm and well-trained disposition.

25      13.  Plaintiff's neurologist and gynecologist both referred Plaintiff for

26  imaging services.  Plaintiff's insurance approved her for an appointment for both an

27  MRI of her brain and an ultrasound of her uterus at Inglewood Imaging.  Plaintiff

28  was able to get an appointment to do both sets of imaging on July 13, 2022, at 2:00

pm.

14.     On July 12, 2022, Plaintiff called Inglewood Imaging and spoke with a staff member to confirm her appointment for the following day.  While she was on the phone with Defendant's employee, Plaintiff mentioned that she would be accompanied by her qualified service dog at her imaging appointment. Defendant's employee immediately informed Plaintiff that no dogs are allowed in the facility. Plaintiff explained to Defendant's employee that Buddy is her service dog and that they could not be separated during her appointment.  However, Plaintiff explained that her IHSS worker would accompany her to the appointment and would be able to care for Buddy while she was receiving the imaging services.  Defendant's employee reiterated that Plaintiff's dog would not be allowed into the facility because "no pets are allowed."

15.     Plaintiff again explained that Buddy is her service dog.  She also explained the tasks that Buddy performs for her, including that he is a seizure alert dog who is allowed to accompany her wherever she goes. Plaintiff also offered to bring a dog stroller to contain Buddy during the appointment if Defendant thought that was necessary. Defendant's employee again told Plaintiff that she would not be able to receive imaging services at Inglewood Imaging if she was accompanied by Buddy during the appointment. Defendant's employee then ended the phone call.

16.     Following this phone conversation, Plaintiff receive a text message confirming her appointment at Inglewood Imaging for July 13, 2022, at 2 pm. This gave Plaintiff some hope that Defendant would allow her to receive imaging services with her service.

17.     On the morning of July 13, 2022, Plaintiff went in person to Inglewood imaging with Buddy and her caregiver to confirm her appointment for 2 pm.  When Plaintiff arrived at Inglewood Imaging, she spoke with one of Defendant's employees at the front desk.  Defendant's employee informed her that Plaintiff's doctors and insurance company had made an appointment for her at a

different imaging center.  Plaintiff had not been informed of any change to her appointment by either her doctors or her insurance company.

18.   Plaintiff asked Defendant's employee why her appointment at Inglewood Imaging had been cancelled, and Defendant's employee stated that she had called Plaintiff's doctor and cancelled the appointment.  Plaintiff asked if Defendant was refusing her service.  Defendant's employee told Plaintiff that she would need to contact her doctor to reschedule the appointment and get another referral because her appointment was cancelled.

19.   Plaintiff insisted and asked if she was being refused services due to the presence of her service dog. Defendant's employee stated that no dogs were allowed in the facility.  Plaintiff again explained that her caregiver would care for Buddy while she received care.  Defendant again stated that she could not have a dog in the facility and asked Plaintiff to leave the premises.

20.   Plaintiff left without receiving any care and with confirmation that her 2 pm appointment that day was cancelled.

21.   Following her visit to Inglewood Imaging on the morning of July 13, 2022, Plaintiff received a voicemail from her doctor's office explaining that her imaging was rescheduled at a different imaging facility over a month later.

22.   On August 15, 2022, Plaintiff went to Mink Radiology to have her ultrasound completed.  She brought Buddy with her to the appointment.  Mink Radiology allowed her to have Buddy with her at the facility.

23.   On August 17, 2022, Plaintiff went to Mink Radiology to have her MRI completed.  She brought Buddy with her to the appointment, and again, she had no issues with receiving services while he was present.

24.   This incident was traumatic for Plaintiff who was demeaned, intimidated, and harassed for asserting her rights under the ADA and state law. Defendant's staff prevented her from having service animal accompany her during her medically necessary imaging appointment, which resulted in Plaintiff having to

make an appointment at another imaging center, delaying Plaintiff's imaging and treatment for more than a month.

25.     Plaintiff has a progressive tumor that must be monitored with regular MRIs.  Plaintiff would like to return to Inglewood Imaging to receive imaging service because she has been treated there previously, it accepts her insurance, and it is convenient to her home.  However, Plaintiff can only feel comfortable returning to receive care *after* Defendant has implemented proper service animal policies and training of its staff.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
**(42 USC §§ 12101 *et seq.*)**

26.     Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the factual allegations contained in Paragraphs 1 through 25, above, and incorporates them herein by reference as if separately repled hereafter.

27.     In 1990 Congress passed the Americans with Disabilities Act after finding that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous."  42 U.S.C. § 12101(a).

28.     The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public

7

accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 USC § 12182.

29.     Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

30.     Inglewood Imaging is a public accommodation within the meaning of Title III of the ADA.  42 U.S.C. § 12181(7)(F).

31.     The ADA prohibits, among other types of discrimination, "failure to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities."  42 U.S.C. § 12182(b)(2)(A)(ii).

32.     Under the "2010 Revised ADA Requirements: Service Animals," as published by the United States Department of Justice, and distributed by the DOJ's Civil Rights Division, Disability Rights Section, "Generally, title II and title III entities must permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go."  ADA 2010 Revised Requirements, www.ada.gov/service -animals-2010.htm  Further,

> **Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.**  For example, in a hospital it would be inappropriate to exclude a service animal from areas such as patient rooms, clinics, cafeterias, or examination rooms. However, it may be appropriate to exclude a service animal from operating rooms or burn units where the animal's presence may compromise a sterile environment.

*Ibid.*, emphasis in original.  Plaintiff has never requested that her service dog be allowed in operating rooms or burn units.

33.     Defendant has a policy and practice of denying and restricting access to patients with service animals.

34.     On information and belief, as of the date of Plaintiff's most recent visit

8

to Inglewood Imaging on or about July 13, 2022, Defendant continues to deny full and equal access to Plaintiff and to discriminate against Plaintiff on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendant's premises, in violation of the ADA.

35.     In passing the Americans with Disabilities Act of 1990 (hereinafter "ADA"), Congress stated as its purpose:

It is the purpose of this Act

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 USC § 12101(b).

36.     As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 USC § 12181 *et seq.*).  The subject property and facility is one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes but is not limited to any "professional office of a health care provider." 42 USC § 12181(7)(F).

37.     The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.  The specific prohibitions against

9

discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

§ 12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

§ 12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

38.     The acts and omissions of Defendant set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq.*

39.     The removal of each of the policy barriers complained of by Plaintiff as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of sections 12181 and 12182 of the ADA.  As noted

hereinabove, removal of each and every one of the policy barriers complained of herein were already required under California law.  In the event that removal of any barrier is found to be "not readily achievable," Defendant still violated the ADA, per section 12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

40.    On information and belief, as of the dates of Plaintiff's encounters at the premises and as of the filing of this Complaint, Defendant's actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other disabled persons who work with service dogs, which violates Plaintiff's right to full and equal access and which discriminates against Plaintiff on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

41.    Defendant's actions continue to deny Plaintiff's rights to full and equal access by deterring Plaintiff from receiving care at Inglewood Imaging and discriminated and continue to discriminate against her on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendant's goods, services, facilities, privileges, advantages and accommodations, in violation of section 12182 of the ADA.  42 U.S.C. § 12182.

42.    Pursuant to the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.,* Plaintiff is entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights Act of 1964, 42 USC 2000(a)-3(a), as Plaintiff is being subjected to discrimination on the basis of her disabilities in violation of sections 12182 and 12183 of this title.  On information and belief, Defendant has continued to violate the law and deny the rights of Plaintiff and other disabled persons to "full and equal" access to this public accommodation since on or before Plaintiff's encounters.  Pursuant to section 12188(a)(2).

11

[i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title.  Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

43.    Plaintiff seeks relief pursuant to remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 USC 2000(a)-3(a)), and pursuant to Federal Regulations adopted to implement the Americans with Disabilities Act of 1990. Plaintiff is a qualified disabled person for purposes of section 12188(a) of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing she will be subjected to such discrimination each time that she may use the property and premises, or attempt to patronize Inglewood Imaging, in light of Defendant's policy barriers.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

**SECOND CAUSE OF ACTION:**
**VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES ACT AS INCORPORATED BY CIVIL CODE SECTION 51(f)**

44.    Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 43 of this Complaint and incorporates them herein as if separately re-pleaded.

45.    At all times relevant to this action, the Unruh Civil Rights Act, California Civil Code § 51(b), provided that:

All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

46.    California Civil Code section 52 provides that the discrimination by Defendant against Plaintiff on the basis of her disability constitutes a violation of the general anti-discrimination provisions of sections 51 and 52.

47.    Inglewood Imaging is a business establishment within the meaning of

12

the Unruh Act.  Defendant is the owner and operator of the business establishment.

48.     Each of Defendant's discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code section 52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

49.     Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including Civil Code section 52.  Per Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

50.     The actions and omissions of Defendant as herein alleged constitute a denial of access to and use of the described public facilities by disabled persons who use service dogs within the meaning of California Civil Code sections 51 and 52.  As a proximate result of Defendant's action and omissions, Defendant has discriminated against Plaintiff in violation of Civil Code sections 51 and 52, and are responsible for statutory, compensatory and treble damages to Plaintiff, according to proof.

51.     Defendant's behavior was intentional: Defendant was aware and/or was made aware of its duties to refrain from establishing discriminatory policies against physically disabled persons, prior to the filing of this Complaint. Defendant's establishment of its discriminatory policy to deny and restrict entry to persons with service dogs, and its implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious

1 disregard for her rights and safety.

2 52. **FEES AND COSTS:**  As a result of Defendant's acts, omissions and

3 conduct, Plaintiff has been required to incur attorney fees, litigation expenses and

4 costs as provided by statute in order to enforce Plaintiff's rights and to enforce

5 provisions of law protecting access for disabled persons and prohibiting

6 discrimination against disabled persons.  Plaintiff therefore seeks recovery of all

7 reasonable attorney fees, litigation expenses and costs pursuant to the provisions of

8 California Civil Code sections 51 and 52.  Additionally, Plaintiff's lawsuit is

9 intended to require that Defendant make its facilities and policies accessible to all

10 disabled members of the public, justifying "public interest" attorney fees, litigation

11 expenses and costs pursuant to the provisions of California Code of Civil Procedure

12 section 1021.5 and other applicable law.

13 53. Plaintiff suffered damages as above-described as a result of

14 Defendant's violations.

15 WHEREFORE, Plaintiff prays for relief as hereinafter stated.

16 **THIRD CAUSE OF ACTION:**
**DAMAGES AND INJUNCTIVE RELIEF**
17 **FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC FACILITIES**
**IN A PUBLIC ACCOMMODATION**
18 **(Civil Code §§ 54 *et seq.*)**

19 54. Plaintiff re-pleads and incorporates by reference, as if fully set forth

20 hereafter, the factual allegations contained in Paragraphs 1 through 53 of this

21 Complaint as plead infra, incorporates them herein as if separately re-pleaded.

22 55. Under the California Disabled Persons Act (CDPA), people with

23 disabilities are entitled to the "full and free use of . . . public buildings, . . . public

24 facilities, and other public places."  Civil Code § 54(a).

25 56. Civil Code section 54.1(a)(1) further guarantees the right of "full and

26 equal access" by persons with disabilities to "accommodations, advantages,

27 facilities . . . hotels, lodging places of accommodation, amusement or resort, or

28 other places to which the general public is invited."  Civil Code § 54.1(c) also

specifies that, "individuals with a disability and persons authorized to train service dogs for individuals with a disability, may take dogs, for the purpose of training them as guide dogs, signal dogs, or service dogs in any of the places specified in subdivisions (a) and (b)."

57.    Civil Code section 54.2(a) specifically protects the right of "every individual with a disability" "to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1."

58.    Civil Code section 54.3(b) makes liable "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2."  This section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but is not limited to, preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out its functions in assisting a disabled person."

59.    Defendant is also in violation of California Penal Code section 365.5(b) which states:

> No blind person, deaf person, or disabled person and his or her specially trained guide dog, signal dog, or service dog shall be denied admittance to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, telephone facilities, adoption agencies, private schools, hotels, lodging places, places of public accommodation, amusement or resort, and other places to which the general public is invited within this state because of that guide dog, signal dog, or service dog.

60.    Inglewood Imaging is a public accommodation within the meaning of the CDPA.  On information and belief, Defendant is the owner, operator, lessor or lessee of the public accommodation.

61.    Defendant made the decision to knowingly and willfully exclude Plaintiff and her service dog from its public accommodation and thereby deny Plaintiff her right of entrance into its place of business with her service dog.  As a

result of that decision Plaintiff has faced the continuing discrimination of being barred from entering this public accommodation and place of business based upon Defendant's illegal prohibition of her legally protected use of her service dog. Plaintiff has continued to suffer denial of access to these facilities, and faces the prospect of unpleasant and discriminatory treatment should she attempt to return to these facilities. Plaintiff is unable to return to Inglewood Imaging until she receives the protection of this Court's injunctive relief, and she has continued to suffer discrimination on a daily basis since May 24, 2022, all to her statutory damages pursuant to California Civil Code §§ 54.1, 54.2, and 54.3 and California Penal Code section 365.5.

62. **INJUNCTIVE RELIEF:** Plaintiff seeks injunctive relief to prohibit the acts and omissions of Defendant as complained of herein which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff and other members of the public who are disabled, including disabled individuals who require the assistance of service animals, from full and equal access to these public facilities. Such acts and omissions are the cause of humiliation and mental and emotional suffering of Plaintiff in that these actions continue to treat Plaintiff as an inferior and second-class citizen and serve to discriminate against her on the sole basis that she is a person with disabilities who requires the assistance of a service animal.

63. Plaintiff wishes to return to Inglewood Imaging but is deterred from returning to use these facilities, because the lack of access and the significant policy barriers will foreseeably cause her further difficulty, discomfort and embarrassment, and Plaintiff is unable, so long as such acts and omissions of Defendant continue, to achieve equal access to and use of these public facilities. Therefore, Plaintiff cannot return to Inglewood Imaging and its facilities and is deterred from further patronage until these facilities are made properly accessible for disabled persons, including Plaintiff and other disabled persons and disabled

16

individuals who require the assistance of a service animal.

64. The acts of Defendant have proximately caused and will continue to cause irreparable injury to Plaintiff if not enjoined by this Court. Plaintiff seeks injunctive relief as to Defendant's inaccessible policies. As to the Defendant that currently own, operate, and/or lease (from or to) the subject premises, Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices that deny full and equal access for disabled persons, and seeks an award of reasonable statutory attorney fees, litigation expenses and costs.

65. Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any continuing refusal by Defendant to grant full and equal access to Plaintiff in the ways complained of and to require Defendant to comply forthwith with the applicable statutory requirements relating to access for disabled persons. Such injunctive relief is provided by California Civil Code sections 54.1, 54.2 and 55, and other laws. Plaintiff further requests that the Court award damages pursuant to Civil Code section 54.3 and other law and attorney fees, litigation expenses, and costs pursuant to Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other law, all as hereinafter prayed for.

66. **DAMAGES:** As a result of the denial of full and equal access to the described facilities and due to the acts and omissions of Defendant in owning, operating, leasing, constructing, altering, and/or maintaining the subject facilities, Plaintiff has suffered a violation of her civil rights, including but not limited to rights under Civil Code sections 54 and 54.1, and has suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal injuries, all to her damages per Civil Code section 54.3, including general and statutory damages, and treble damages, as hereinafter stated. Defendant's actions and omissions to act constitute discrimination against Plaintiff on the basis that she was and is physically disabled and unable, because of the policy barriers created and/or maintained by the Defendant in violation of the subject laws, to use the

public facilities on a full and equal basis as other persons.  The violations have deterred Plaintiff from returning to attempt to patronize Inglewood Imaging and will continue to cause her damages each day these barriers to access and policy barriers continue to be present.

67.     Further, although it is not necessary for Plaintiff to prove wrongful intent in order to show a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA (*see Donald v. Café Royale*, 218 Cal. App. 3d 168, 177 (1990)), Defendant's behavior was intentional. Defendant was aware and/or were made aware of its duties to refrain from establishing discriminatory policies against disabled persons, prior to the filing of this complaint.  Defendant's establishment of its discriminatory policy to deny and restrict entry to persons with service dogs, and its implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for her rights and safety.

68.     **FEES AND COSTS:**  As a result of Defendant's acts, omissions, and conduct, Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses, and costs, pursuant to the provisions of Civil Code sections 54.3 and 55.  Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

## **PRAYER**

Plaintiff has no adequate remedy at law to redress the wrongs suffered as set

1    forth in this Complaint.  Plaintiff has suffered and will continue to suffer

2    irreparable injury as a result of the unlawful acts, omissions, policies, and practices

3    of the Defendant as alleged herein, unless Plaintiff is granted the relief she

4    requests.  Plaintiff and Defendant have an actual controversy and opposing legal

5    positions as to Defendant's violations of the laws of the United States and the State

6    of California. The need for relief is critical because the rights at issue are

7    paramount under the laws of the United States and the State of California.

8          WHEREFORE, Plaintiff Claudia Motley prays for judgment and the

9    following specific relief against Defendant:

10         1.    An order enjoining Defendant, its agents, officials, employees, and all

11   persons acting in concert with them:

12              a.  From continuing the unlawful acts, conditions, and practices described

13                  in this Complaint;

14              b.  To modify their policies and practices to accommodate service dog

15                  users in conformity with federal and state law, and to advise Plaintiff

16                  that her service dog will not be excluded should she desire to enter and

17                  use the services of Inglewood Imaging;

18              c.  That the Court issue preliminary and permanent injunction directing

19                  Defendant as current owners, operators, lessors, and/or lessees and/or

20                  their agents of the subject property and premises to modify the above

21                  described property, premises, policies and related policies and

22                  practices to provide full and equal access to all persons, including

23                  persons with disabilities; and issue a preliminary and permanent

24                  injunction pursuant to ADA section 12188(a) and state law directing

25                  Defendant to provide facilities usable by Plaintiff and similarly

26                  situated persons with disabilities, and which provide full and equal

27                  access, as required by law, and to maintain such accessible facilities

28                  once they are provided and to train Defendant's employees and agents

in how to recognize disabled persons and accommodate their rights and needs;

d. An order retaining jurisdiction of this case until Defendant have fully complied with the orders of this Court, and there is a reasonable assurance that Defendant will continue to comply in the future absent continuing jurisdiction;

2. An award to Plaintiff of statutory, actual, general, treble, and punitive damages in amounts within the jurisdiction of the Court, all according to proof;

3. An award of civil penalty as against Defendant under California Penal Code § 365.5(c);

4. An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a, California Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5, and as otherwise permitted by law, of the costs of this suit and reasonable attorneys' fees and litigation expenses;

5. An award of prejudgment interest pursuant to Civil Code § 3291;

6. Interest on monetary awards as permitted by law; and

7. Grant such other and further relief as this Court may deem just and proper.

Date: November 17, 2022                REIN & CLEFTON

                                        _/s/ Aaron M. Clefton_
                                       By AARON M. CLEFTON, Esq.
                                       Attorneys for Plaintiff
                                       CLAUDIA MOTLEY

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all claims for which a jury is permitted.

Date: November 17, 2022                REIN & CLEFTON

                                        _/s/ Aaron M. Clefton_

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By AARON M. CLEFTON, Esq.
Attorneys for Plaintiff
CLAUDIA MOTLEY

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES